# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

MADELENE SMITH, as the
surviving spouse and wrongful
death beneficiary of Hugh Max
Smith, Jr., deceased,

    Plaintiff,

    v.

WAYNE COUNTY, GEORGIA, et al.,

    Defendants.

2:23-CV-27

## ORDER

Before the Court are two motions to dismiss Plaintiff's third amended complaint: Defendant Ed Jeffords' motion to dismiss, dkt. no. 54, and Defendants Richard Johnson, Spell Phillips, Donnie Ray, Desiree Roberson, Wayne County Ambulance Service, and Wayne County, Georgia's (collectively "the Wayne County Defendants") motion to dismiss, dkt. no. 57. These motions have been fully briefed and are ripe for review. For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** both motions.

## BACKGROUND

This case arises out of the death of Plaintiff Madeline Smith's late husband, Hugh Max Smith, Jr. Plaintiff seeks damages as the surviving spouse and wrongful death beneficiary of Mr. Smith. See generally Dkt. No. 51. At all relevant times, Plaintiff

and Mr. Smith (collectively "the Smiths") resided in, were citizens of, and paid taxes in Wayne County, Georgia. Id. ¶ 10.

I.   **Factual Background**

On April 14, 2021, Mr. Smith, suffering from "shortness of breath and some trouble breathing," was admitted to the emergency room at Wayne Memorial Hospital, where he was diagnosed with pneumonia. Id. ¶¶ 11-14. Mr. Smith's oxygen saturation level remained at 91% from the time he was admitted until later that night when Mr. Smith was discharged. Id. ¶¶ 13-15. Upon discharge, Mr. Smith was provided an oximeter—or oxygen monitor—to continue measuring his oxygen saturation level, and he was instructed to return to the emergency room if his oxygen saturation level dropped below 88% or his symptoms worsened in any way. Id. ¶ 15. Immediately upon arriving home, Mr. Smith began experiencing difficulty breathing, and the oximeter showed his oxygen saturation level was below 85%. Id. ¶ 17. Within minutes, his oxygen level had dropped to 79%. Id.

Because of Mr. Smith's low oxygen saturation level, Plaintiff dialed 911, and her call was routed to the Wayne County E-911 Call Center (hereinafter "the first call"). Id. ¶ 20. During the first call, Plaintiff spoke with Defendant E-911 Dispatcher Desiree Roberson. Id. ¶ 21. Plaintiff explained the situation, and Defendant Roberson informed her that an ambulance would be sent out to the Smiths' residence. Id. ¶¶ 22-26. After eighteen minutes,

no ambulance had arrived, so Plaintiff called 911 again (hereinafter "the second call"). Id. ¶¶ 30–31. This time, Plaintiff spoke with Defendant E-911 Dispatcher Spell Phillips. Id. ¶ 33. Plaintiff explained the situation and asked Defendant Phillips if she knew when the ambulance would arrive. Id. ¶ 35. Defendant Phillips told Plaintiff she did not have an "ETA" but the ambulance was "on the way." Id. ¶ 36. Plaintiff also asked Defendant Phillips if it would be quicker for her to drive Mr. Smith to the hospital, and Defendant Phillips assured her the ambulance was on the way and "should be there any time." Id. ¶¶ 37–38. Neither Defendant Roberson nor Defendant Phillips "offer[ed] to stay on the line with Plaintiff until an ambulance arrived, advise[d] [Plaintiff] as to when an ambulance could be expected, or advise[d] Plaintiff as to any life-preserving or life-saving techniques that might help Mr. Smith." Id. ¶¶ 28, 40. The first call lasted one minute and twenty-four seconds. Id. ¶ 27. The second call lasted fifty seconds. Id. ¶ 39.

Six minutes after the second call and twenty-five minutes after the first call, a City of Jesup Fire Department firetruck and two firefighters arrived at the Smiths' residence. Id. ¶ 42. After Plaintiff explained the situation to the two firefighters, they indicated they "were not aware of the situation" or Mr. Smith's "immediate need for oxygen," so they had no oxygen with them. Id. ¶ 45. The firefighters also explained that, because they

were not EMTs, they could not render medical aid to Mr. Smith and, because their firetruck was not equipped for transport, they could not transport Mr. Smith to the hospital. Id. ¶ 46. The firefighters told Plaintiff an ambulance was not coming and advised her to drive Mr. Smith to the hospital. Id. ¶ 48. The firefighters helped Plaintiff get Mr. Smith in the car, and Plaintiff drove Mr. Smith to the hospital. Id. ¶¶ 49-50. During the drive, Mr. Smith's condition continued to deteriorate, and he "lost consciousness just before Plaintiff pulled into the [] emergency drop-off area." Id. ¶¶ 52-53.

Mr. Smith was finally re-admitted to the hospital over forty minutes after the first call, and medical officials determined Mr. Smith had suffered cardiac arrest in the drop-off area. Id. ¶¶ 54-55. "The cardiac arrest was . . . caused by a lack of oxygen saturation and the resulting acute respiratory and pulmonary distress." Id. ¶ 55. Although hospital staff managed to restart Mr. Smith's heart and restore his oxygen saturation level to 95%, Mr. Smith never awoke because he "suffered an anoxic brain injury [caused by a] lack of oxygen to his brain." Id. ¶ 56. He never recovered from his brain injury and was later transported to Mayo Clinic, where Plaintiff ultimately followed the doctor's recommendation and removed him from life support. Id. ¶¶ 57-58. Healthcare professionals ruled Mr. Smith's cause of death as

"anoxic brain injury, cardiac arrest, and systolic heart failure."
Id. ¶ 59.

## II.  Procedural History

Plaintiff initially filed suit in the Superior Court of Wayne County, but Defendants removed the case to this Court. Dkt. No. 1. Following Defendants' motions for a more definite statement, dkt. nos. 5, 6, Plaintiff filed her first amended complaint, dkt. no. 9. Defendants then moved to dismiss the first amended complaint, arguing the first amended complaint was a shotgun pleading that did not comply with federal pleading standards. Dkt. Nos. 13, 15. Although the Court found the first amended complaint did suffer from some pleading deficiencies, the motions to dismiss were denied, and the Court ordered Plaintiff to amend her complaint to comply with Federal Rule of Civil Procedure 8(a)(2). Dkt. No. 29. Thereafter, Plaintiff filed her second amended complaint. Dkt. No. 31. Defendants then moved to dismiss Plaintiff's second amended complaint for violating Rule 8(a)(2), dkt. nos. 34, 36, which the Court also denied, dkt. no. 50. Although the second amended complaint suffered from pleading deficiencies, it did not suffer from the *same* deficiencies as the first amended complaint, so the Court ordered Plaintiff to once again amend her complaint to remedy the newly identified pleading violations. Id. Plaintiff then filed her third amended complaint—the operative pleading before the Court. Dkt. No. 51.

### A. Claims against Wayne County, Georgia

Plaintiff asserts claims against Wayne County, Georgia (hereinafter "Wayne County" or "Defendant Wayne County"). Wayne County "is a political subdivision of the State of Georgia and a body corporate organized and existing under the Constitution of the State of Georgia." Id. ¶ 2. Plaintiff asserts both federal and state claims against Wayne County. Federally, Plaintiff asserts Monell liability claims, pursuant to 42 U.S.C. § 1983, for procedural due process violations, id. at 23, and substantive due process violations, id. at 28. Plaintiff also asserts against Wayne County state law claims for negligence, negligence per se, imputed negligence, breach of public and legal duties, wrongful death, and loss of consortium. Id. at 43, 51, 75, 89, 113, 114.

### B. Claims against Wayne County Ambulance Services

Plaintiff also brings claims against Wayne County Ambulance Services (hereinafter "Defendant WCAS" or "WCAS"). WCAS "is an ambulance service . . . licensed and regulated by the Georgia Department of Public Health" and "a department of Wayne County." Id. ¶ 4. Against WCAS, Plaintiff asserts only state law claims—specifically, negligence, negligence per se, breach of public and legal duties, wrongful death, and loss of consortium. Id. at 45, 56, 91, 113, 114.

### C.  Claims against Ed Jeffords

Along with organizational defendants Wayne County and WCAS, Plaintiff asserts claims against several individual defendants. First, Plaintiff sues Ed Jeffords, the Wayne County Administrator. Id. ¶ 3. Plaintiff asserts a § 1983 supervisory liability claim against Defendant Jeffords, in his official capacity, for substantive due process violations. Id. at 38. Plaintiff also asserts state law claims against Defendant Jeffords in both his individual and official capacities, including claims for negligence, negligence per se, negligent supervision, negligent training, breach of public and legal duties, wrongful death, and loss of consortium, id. at 46, 59, 76, 83, 93, 113, 114, and four claims for violation of discretionary duty with actual malice or an intent to injure, id. at 69, 79, 86, 102.

### D.  Claims against Richard Johnson

Next, Plaintiff brings claims against Richard Johnson, the Wayne County Emergency Services ("EMS") Director. Id. ¶ 5. Plaintiff asserts a § 1983 supervisory liability claim against Defendant Johnson, in his official capacity, for substantive due process violations. Id. at 38. Plaintiff further asserts against Defendant Johnson, in both his individual and official capacities, state law claims of negligence, negligence per se, breach of public

and legal duties, wrongful death, loss of consortium, and violation
of discretionary duty with actual malice or an intent to injure.

### E. Claims against Donnie Ray

Plaintiff next brings claims against Donnie Ray, the Wayne
County Emergency Management Director and Wayne County E-911
Coordinator. Id. ¶ 6. Plaintiff asserts a § 1983 supervisory
liability claim against Defendant Ray, in his official capacity,
for substantive due process violations. Id. at 38. Under Georgia
law, Plaintiff sues Defendant Ray, in his official and individual
capacities, for negligence, negligence per se, negligent
supervision, negligent training, breach of public and legal
duties, wrongful death, loss of consortium, and four counts of
violation of discretionary duty with actual malice or intent to
injure. Id. at 49, 66, 72, 78, 81, 84, 87, 98, 108, 113, 114.

### F. Claims against Desiree Roberson and Spell Phillips

Finally, Plaintiff brings claims against Desiree Roberson and
Spell Phillips, who are both Wayne County E-911 dispatchers. Id.
¶¶ 7-8. Defendant Roberson spoke with Plaintiff during the first
call, and Defendant Phillips spoke with Plaintiff during the second
call. Plaintiff asserts § 1983 deliberate indifference claims
against Defendants Roberson and Phillips, in their official
capacities, for substantive due process violations. Id. at 32.
Plaintiff's state law claims against Defendants Roberson and
Phillips are for negligence, negligence per se, breach of public

and legal duties, violation of discretionary duty with actual malice or an intent to injure, wrongful death, and loss of consortium. Id. at 67, 74, 101, 111, 113, 114.

## G. Defendants' Motions to Dismiss

Defendant Jeffords has moved to dismiss, seeking dismissal of all the claims against him. Dkt. No. 54. The Wayne County Defendants have filed a separate motion to dismiss, seeking dismissal of all the claims against them. Dkt. No. 57.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To state a claim for relief, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). That said, the Court does not accept as true threadbare recitations of the elements of the claim and disregards legal conclusions unsupported by factual

allegations. Iqbal, 556 U.S. at 678-79. At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

Defendants first argue that the third amended complaint is a shotgun pleading that violates Rule 8(a)(2). Dkt. No. 54 at 4-6; Dkt. No. 57 at 5-14. Alternatively, Defendants make several substantive arguments as to why Plaintiff's claims should be dismissed. The Court first addresses Defendants' contention that the third amended complaint is a shotgun pleading.

## I.   Shotgun Pleading

All Defendants argue that Plaintiff's third amended complaint is a shotgun pleading that violates Rule 8(a)(2) and the Court's most recent repleading order. Dkt. No. 54 at 4-6; Dkt. No. 57 at 5-14. For the reasons set forth below, the Court finds the third amended complaint complies with Rule 8(a)(2) and is not a shotgun pleading.

### A.   Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Further, "[e]ach allegation must be simple, concise, and direct," but "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). "The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading.'" Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021) (alteration in original) (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)). "These rules were also written for the benefit of the court, which must be able to determine 'which facts support which claims,' 'whether the plaintiff has stated any claims upon which relief can be granted,' and whether evidence introduced at trial is relevant." Id. (quoting Weiland, 792 F.3d at 1320). Complaints that violate these rules are commonly referred to as "shotgun pleadings."

There are four "rough" types of shotgun pleadings. Weiland, 792 F.3d at 1321. The first type is a complaint that contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland, 792 F.3d at 1321. The second type is a complaint "replete with conclusory, vague, and immaterial facts

not obviously connected to any particular cause of action." Id. at 1321-22. The third type is one that fails to separate different claims for relief into separate counts. Id. at 1322. And the fourth type is one that contains "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. Regardless of type, "[t]he unifying characteristic of all . . . shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

If a court determines that a complaint is a shotgun pleading, it must "allow a litigant one chance to remedy such deficiencies" by instructing the plaintiff to replead its complaint. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (citations omitted). "Implicit in such instruction is the notion that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001). In determining whether a case should be dismissed after a repleader, "the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them." Jackson v. Bank of Am., N.A., 898 F.3d 1348,

1358 (11th Cir. 2018). Still, the court has "inherent authority to control its docket and ensure prompt resolution of lawsuits." Weiland, 792 F.3d at 1320. And it is within the court's discretion to determine whether to dismiss a repleader that continues to suffer from pleading deficiencies. Id.

**B. Analysis**

The Court first notes that Plaintiff complied with its most recent order to replead and remedy the deficiencies of her second amended complaint. See generally Dkt. No. 50. Therein, the Court required Plaintiff to: remove unnecessarily repetitive allegations, id. at 10-12; shorten allegations that were too verbose, id. at 12-15; and remove all "impermissible legal argument," id. at 15. Plaintiff has done so. She removed the repetitive allegations highlighted by the Court, and she removed all case citations. See generally Dkt. No. 51. Furthermore, she shortened certain allegations that were unnecessarily wordy. Id. By doing so, Plaintiff followed the Court's final mandate of reducing the length of her complaint. As Defendants acknowledge, "Plaintiff [] reduced the length of her operative pleading by roughly 14 to 17 percent." Dkt. No. 54 at 4. In its previous two repleading orders, the Court made clear that a complaint's length is not reason for dismissal under Rule 8(a)(2). Dkt. No. 29 at 12 ("Length alone does not define a shotgun pleading."); Dkt. No. 50 at 17 ("[T]his Court reiterates its previous position that

'[l]ength alone does not define a shotgun pleading.' (quoting Dkt. No. 29 at 12)). Even so, Defendants continue to argue that Plaintiff's third amended complaint is too long. Dkt. No. 54 at 4; Dkt. No. 57 at 13–14. The Court reiterates: A complaint's length alone is not reason for dismissal. Any argument about the third amended complaint's length is unpersuasive. The Court therefore turns to Defendants' other arguments in favor of dismissal on shotgun pleading grounds.

First, Defendants argue that the third amended complaint should be dismissed because it is repetitive. Dkt. No. 57 at 7; Dkt. No. 54 at 4. Defendants offer a few examples of paragraphs they believe are repetitive. For one, Defendants note the similarities between two paragraphs generally alleging certain duties owed to Plaintiff and Mr. Smith. Dkt. No. 57 at 8 n.3 (citing Dkt. No. 51 ¶¶ 508, 521). But while these paragraphs do allege similar duties, they are discussing two different Defendants. Compare Dkt. No. 51 ¶ 508 ("Defendant Wayne County had duties to Plaintiff and Mr. Smith to operate WCAS in a manner . . . .") with id. ¶ 521 ("Defendant WCAS had duties to Plaintiff and Mr. Smith to operate in a manner . . . ."). These are not repetitive because Plaintiff is alleging two different Defendants owe duties to Plaintiff and Mr. Smith.

Additionally, the third amended complaint is not generally repetitive. While there are paragraphs that are similar, each

paragraph may be necessary to satisfy a recurring element of several claims. Indeed, to avoid dismissal for failure to state a claim under Rule 12(b)(6), Plaintiff must include allegations that meet each claim's elements. See, e.g., Marantes v. Miami-Dade Cnty., 649 Fed. Appx. 665, 669 (11th Cir. 2016) ("The complaint must introduce facts that plausibly establish each essential element of the asserted cause of action." (citing Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 713 (11th Cir. 2014))). As an example, Plaintiff sues Defendant Wayne County for both negligence and negligence per se. See id. at 43-45, 51-56. Both claims require Plaintiff to allege the elements of negligence, including duty. Thus, Plaintiff must include an allegation of duty in both Counts, and that may require paragraphs that are necessarily repetitive. After reviewing the third amended complaint, the Court finds that Plaintiff's seemingly repetitive allegations are necessary to state each claim Plaintiff brings.

Next, Defendants argue the third amended complaint should be dismissed because it is unnecessarily detailed. Dkt. No. 57 at 9; Dkt. No. 54 at 4. They are wrong. Plaintiff brings thirty-two claims, ranging from simple negligence claims to § 1983 claims for substantive due process violations, against seven different defendants. Plaintiff's complaint must be sufficient to allow Defendants to "discern what [Plaintiff] is claiming and frame a responsive pleading." Barmapov, 986 F.3d at 1324 (internal

quotations omitted). And to reiterate, Plaintiff is obligated to ensure that each claim's elements are met under Rule 12(b)(6). See Marantes, 649 Fed. Appx. at 669. Thus, Plaintiff must include a certain level of detail. After reviewing the third amended complaint, the Court finds that Plaintiff's "detailed" allegations sufficiently put Defendants on notice of the claims against them. As an example, Defendants take umbrage with the third amended complaint's paragraphs surrounding Wayne County Commission meetings. Dkt. No. 57 at 9-10. Defendants specifically argue that one paragraph, dkt. no. 51 ¶ 83, contains only one sentence that is "arguably relevant information," dkt. no. 57 at 10. But the Court cannot say with certainty that the county commission meetings are not relevant to Plaintiff's numerous claims. Put plainly, the Court does not find that allegations surrounding county commission meetings denote a complaint that is "replete with . . . immaterial facts not *obviously* connected to any particular cause of action." Weiland, 792 F.3d at 1321-22 (emphasis added). Consequently, the Court finds that the third amended complaint is not unnecessarily detailed or verbose.

Finally, Defendants argue that the third amended complaint should be dismissed because it is unnecessarily legalistic. Dkt. No. 57 at 11. This argument fails as well. Plaintiff, as required by this Court in its recent repleading order, removed all case citations upon amending her complaint. The only legal citations

remaining in the third amended complaint are those to certain state and local ordinances. And as will be discussed later, these citations are consequential in determining whether qualified immunity applies. See infra pp. 39–41. Therefore, Plaintiff's inclusion of those citations is not violative of federal pleading standards. Alternatively, Defendants asserts that the third amended complaint "remains unnecessarily lengthened by citations of law, if not case law specifically." Dkt. No. 57 at 12. Essentially, Defendants argue that Plaintiff includes paragraphs that recite legal elements without factual support. But this is not cause for dismissal. Insofar as Plaintiff does include allegations that are merely recitations of legal elements, Defendants can rest assured that the Court will not consider those paragraphs in analyzing whether the third amended complaint should be dismissed for failure to state a claim. In fact, those paragraphs must be excluded from any substantive determination the Court makes. See Iqbal, 556 U.S. at 678–79. After having removed case citations, Plaintiff's third amended complaint is not overly legalistic.

At bottom, Plaintiff's third amended complaint complies with the Court's order to replead and remedy the deficiencies of her second amended complaint. And with those remedies, the third amended complaint is not a shotgun pleading in violation of Rule 8(a)(2). Indeed, the third amended complaint puts both Defendants

and the Court on notice of Plaintiff's potential causes of action. Barmapov, 986 F.3d at 1324. As evidenced below, Defendants managed to make substantive arguments in support of dismissal, and the Court was able to analyze whether Plaintiff had stated a claim for all of her causes of actions. Therefore, Defendants' motions to dismiss the third amended complaint on shotgun pleading grounds are **DENIED**. Dkt. No. 54 at 4–6; Dkt. No. 57 at 5–14.

It took a while to get to this point, largely because there are alert, seasoned attorneys on both sides of the case. The briefs filed, motions made, and Orders issued evince the tension between Plaintiff's obligation to allege enough to properly set forth multiple causes of action against multiple defendants and each Defendant's obligation to demand a clear, non-verbose complaint. The Court's Orders have fairly balanced the well-pitched battle, the result of which is the Third Amended Complaint. The Court can now examine Defendants' other arguments in support of dismissal.

## II.  Plaintiff's Claims Against WCAS

The Court first examines WCAS's sole argument as to why Plaintiff's claims against it should be dismissed. Specifically, WCAS contends it "is not a legal entity subject to suit." Dkt. No. 57 at 14. The Wayne County Defendants explain that, "[w]hile a Georgia county 'is a body corporate with power to sue or be sued in any court,' the county's departments and other subsidiaries generally are not independent legal entities." Id. (quoting

O.C.G.A. § 36-1-3). They assert that WCAS is a department of Wayne County and "[n]either the Georgia Constitution[] nor the Georgia Code[] provide[] that a county's ambulance service is an independent legal entity capable of being sued." Thus, Defendants argue, "Plaintiff's claims against [WCAS] fail for want of a valid [d]efendant and should be dismissed." Id. at 15; see also Myers v. Clayton Cnty. Dist. Att'y's Off., 849 S.E.2d 252, 257 (Ga. Ct. App. 2020) (finding a county department was not a legal entity fit to be sued where "neither the Georgia Code nor the Georgia Constitution establishe[d] the [department] as a separate legal entity capable of being sued"). Plaintiff agrees that "*if* Defendant WCAS is a [] subsidiary department or entity of Defendant Wayne County, then it would not be a 'separate legal entity capable of suing or being sued.'" Dkt. No. 59 at 14 (emphasis added) (quoting Myers, 849 S.E.2d at 246). But, according to Plaintiff, it is unclear whether WCAS "is actually a department of Defendant Wayne County in the legal sense or [] a separate legal entity by license that is merely affiliated with the county and treated as the functional equivalent of a department." Id. Thus, Plaintiff argues, "given the posture of this case" and the lack of relevant evidence, the Court cannot determine WCAS's legal status at this time. Id. Discovery will confirm whether WCAS is under Wayne County's structure. At this point, though, Defendants' motion to dismiss WCAS on this ground is **DENIED**. Dkt. No. 57 at 14.

## III. Plaintiff's Federal Law Claims

Plaintiff asserts the following federal law claims: a procedural due process claim against Wayne County, dkt. no. 51 at 23–28; a substantive due process claim against Wayne County, id. at 28–32; substantive due process claims against Defendants Roberson and Phillips, in their individual capacity, id. at 32–38; and substantive due process claims, based on supervisory liability, against Defendants Jeffords, Johnson, Ray, in their individual capacities, id. at 38–43. Plaintiff asserts each claim under § 1983. Id. at 23–43. Defendants argue for dismissal of Plaintiff's federal law claims because Plaintiff has failed to state a claim and the Defendants sued in their individual capacity are entitled to qualified immunity. The Court begins with Plaintiff's procedural due process claim against Wayne County.

### A. Plaintiff has stated a procedural due process claim against Wayne County.

In Count One, Plaintiff claims "Monell liability for procedural due process violations under color of law pursuant to 42 U.S.C. § 1983 [against] Defendant Wayne County." Id. at 51. Defendant argues Count I should be dismissed for failure to state a claim. Dkt. No. 57 at 21–22. To state a § 1983 claim for a procedural due process clause violation in the Eleventh Circuit, Plaintiff must sufficiently allege three elements: "deprivation of a constitutionally-protected liberty or property interest; state

action; and constitutionally inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).

As to the first element, Plaintiff alleges that Wayne County failed to notify the Smiths of WCAS's policy of telling callers, like the Smiths, that an ambulance was on the way even when it was not. Dkt. No. 51 ¶¶ 128, 132. Plaintiff further alleges that, because of that policy, she and Mr. Smith were denied an ability to make informed decisions on whether they should rely on WCAS. Id. ¶ 132. The ability to make informed decisions, especially medical ones, is a contemplated liberty interest under the Fourteenth Amendment. See Bd. of Regents v. Roth, 408 U.S. 564, 572 (1972) ("Without doubt, [liberty] denotes . . . the right of an individual . . . to acquire useful knowledge." (internal quotation omitted)). Plaintiff has also satisfied the second element because she alleges that Wayne County, as an arm of the State of Georgia, deprived her of that interest. See, e.g., Hines v. Etheridge, 162 S.E. 113, 117 (Ga. 1931) ("[Counties] are local, legal, political subdivisions of the State, created out of its territory, and are arms of the State, created, organized, and existing for civil and political purposes, particularly for the purpose of administering locally the general powers and policies of the State."). Defendants, therefore, do not argue that Plaintiff has failed to satisfy those elements.

Instead, Defendants argue that Plaintiff's allegations fail to satisfy the third element because Plaintiff fails to "identify any process that [] was due to her or Mr. Smith prior to the incident at issue." Dkt. No. 57 at 22. To that end, Defendants argue Plaintiff's procedural due process claim "is simply not cognizable in this context . . . because 'the Constitution does not contemplate any procedural rights in advance of an accidental shooting.'" Id. at 21 (quoting Niziol v. Pasco Cnty. Dist. Sch. Bd., 240 F. Supp. 2d 1194, 1210 (M.D. Fla. 2002)). But Niziol is unpersuasive at this stage, in this context. The Niziol court dismissed a procedural due process claim because the plaintiff had failed to establish the first element—deprivation of a constitutionally-protected interest. See Niziol, 240 F. Supp. 2d at 1210 ("Plaintiffs have failed to establish that there is a constitutionally protected right in the first instance."). In this case, Plaintiff has cleared that hurdle for now. Moreover, the Niziol court's analysis of the inadequate process element is inapplicable to this case. Notably, the court determined that a school's "failure to investigate" a potential weapon "in advance of an accidental shooting" did not establish a lack of constitutionally adequate process. Id. at 1210–11. But here, Plaintiff is not contending that Wayne County failed to investigate a potential weapon. Rather, Plaintiff claims that she and Mr. Smith were not afforded sufficient process before choosing to rely on

WCAS and Wayne County's allegedly fraudulent policy of lying to callers about whether an ambulance is on the way. Dkt. No. 51 ¶ 132. And as to that claim, Defendants have provided no authority that forecloses Plaintiff's theory of recovery at the motion to dismiss to stage. See, e.g., Sprint Sols., Inc. v. Fils-Amie, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) ("Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal.").

Additionally, Defendants' contention that the procedural due process claim should be dismissed because Plaintiff has not "explained what . . . 'constitutionally adequate process' would have looked like in this case" is unpersuasive. Dkt. No. 57 at 22. Plaintiff alleges that Wayne County, by withholding the policy from the Smiths, barred the Smiths' "opportunity to weigh in and seek redress" through various means.[1] Dkt. No. 51 ¶ 142. Plaintiff

---

[1] The specific ways Plaintiff contends the Smiths could have sought redress include "challenging County officials at public meetings and forums, demanding hearings, or otherwise pursuing state remedies, such as exercising their right to vote, filing lawsuits for injunctive relief or mandamus, lodging complaints with the Georgia Emergency Management Agency, lodging complaints as to the County E-911 Call Center with the GECA, lodging complaints with the office of the Attorney General of Georgia, lodging complaints with the Office of the Governor, filing petitions for redress of grievance under the First Amendment, writing letters to the editor, making requests for the appointment of more competent officials by the elected County commissioners, or by taking any number of other means of redress available to all citizens of Georgia and the United States." Dkt. No. 51 ¶ 142.

*does* explain what constitutionally adequate process would look like here. And at the motion to dismiss stage, her allegations satisfy the third element of a procedural due process claim. Accordingly, Defendants' motion to dismiss Count One is **DENIED**.

B. **Plaintiff has stated a substantive due process claim against Defendants Jeffords, Johnson, Ray, Roberson, and Phillips.**

Next, the Court turns to Count Three, Plaintiff's substantive due process claims against Defendants Roberson and Phillips, and Count Four, Plaintiff's substantive due process claims against Defendants Jeffords, Johnson, and Ray. Defendants argue both Counts should be dismissed because Plaintiff has failed to state a claim for substantive due process violations. Dkt. No. 57 at 15–21. Additionally, Defendants assert that Defendants Jeffords, Johnson, Ray, Roberson, and Phillips—all of whom are sued in their individual capacities—are protected by qualified immunity. Dkt. No. 57 at 15–21; Dkt. No. 54 at 6–14.

1. **Applicable Law**

At the motion to dismiss stage, the Court's analysis of whether Plaintiff has stated a claim is largely coextensive with its analysis of whether the allegations are sufficient to overcome qualified immunity. "To state a claim under § 1983, [] [P]laintiff must allege the violation of a right secured by the Constitution and laws of the United States, and [she] must show that the alleged deprivation was committed by a person acting under color of state

law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Plaintiff must also allege facts sufficient to overcome qualified immunity. <u>See, e.g.</u>, <u>Zinnia Chen v. Lester</u>, 364 F. App'x 531, 534 (11th Cir. 2010) ("When dealing with claims of qualified immunity, plaintiffs are required to allege facts that would defeat the claim of qualified immunity with 'some specificity.'" (quoting <u>GJR Invs. Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1367 (11th Cir. 1998))). "To overcome qualified immunity," Plaintiff's allegations must establish that: "(1) [Defendants] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1264 (11th Cir. 2004).

Plaintiff is required to allege a constitutional violation both to state a claim under Rule 12(b)(6) and to overcome the first prong of qualified immunity. Simply put, for Counts Three and Four to survive a motion to dismiss, Plaintiff must sufficiently allege that Defendants Jeffords, Johnson, Ray, Roberson, and Phillips violated a constitutional right. If she has done that, then the Court must determine whether that right was clearly established at the time of the alleged violation. The Court begins with Plaintiff's allegations against Defendants Roberson and Phillips.

## 2. Defendants Roberson and Phillips

Defendants and Plaintiff agree that Mr. Smith was in a "non-custodial" relationship with Defendants Roberson and Phillips

(hereinafter "the Operator-Defendants") when they allegedly violated his substantive due process rights. See Dkt. No. 57 at 15–18; Dkt. No. 71 at 3 ("Neither Wayne County nor its officials and/or employees ever took custody of Mr. Smith[,] and Plaintiff does not allege that the Court should view this as a custodial case."). The nature of this relationship is important, as the Eleventh Circuit requires a higher degree of culpability to establish a substantive due process violation in the non-custodial context. While the parties initially disagreed over what standard should apply,[2] Eleventh Circuit precedent is clear: To establish a substantive due process violation in a non-custodial setting, Plaintiff must allege facts showing the Operator-Defendants' conduct was "arbitrary or conscience-shocking." See Davis v. Carter, 555 F.3d 979, 982 (11th Cir. 2009) ("Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary

---

[2] In her response brief, Plaintiff argues that, even in non-custodial cases, "deliberate indifference" was the correct standard under which the Court should analyze Defendants' conduct. See Dkt. No. 59 at 7 ("A substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in Mr. Smith's position."). But upon filing her supplemental brief with the Court, Plaintiff recognized that the "shocks-the-conscience" standard is appropriate. See Dkt. No. 71 at 6 (agreeing that "mere negligence, reckless behavior, or deliberate indifference will not amount to a substantive due process claim" in the non-custodial context).

or conscience-shocking in a constitutional sense." (citing <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847 (1998))).

"The question for this [C]ourt, then, is whether [Plaintiff] asserts a claim that satisfies what the Supreme Court calls the 'shocks-the-conscience test.'" <u>Sanders v. Boutwell</u>, 426 F. Supp. 3d 1235, 1242 (M.D. Ala. 2019) (quoting <u>Lewis</u>, 523 U.S. at 834). Of course, neither the Supreme Court nor the Eleventh Circuit has defined what conduct "shocks the conscience" in every circumstance. <u>See</u> <u>id.</u> ("[T]he Supreme Court has declined to articulate a comprehensive and categorical definition of a middle range of culpability . . . that would satisfy the [shocks-the-conscience] test."). Instead, conduct "is to be tested by an appraisal of the totality of facts in a given case." <u>Lewis</u>, 523 U.S. at 850 (internal quotations omitted); <u>see also</u> <u>Waldron v. Spicher</u>, 954 F.3d 1297, 1307 (11th Cir. 2020) ("[T]he context in which the officer's action occurs is important in determining the level of culpability required for a plaintiff to state a viable substantive due process violation."). Put another way, "due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." <u>Lewis</u>, 523 U.S. at 850.

Some conduct, however, is undeniably *not* conscience-shocking. For example, negligence "is categorically beneath the threshold of constitutional due process." <u>Id.</u> at 849. Additionally, under

Eleventh Circuit precedent, neither "recklessness [n]or deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." Waldron, 954 F.3d at 1307-10; see also Nix v. Franklin Cnty. Sch. Dist., 311 F.3d 1373, 1377 (11th Cir. 2002) ("[The Eleventh Circuit] has been explicit in stating that deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting."); Davis, 555 F.3d at 983 ("[D]eliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting.").

On the other hand, if Plaintiff alleges that the Operator-Defendants intended to cause Mr. Smith's death, their conduct would be conscience-shocking under these circumstances.[3] See, e.g., Lewis, 523 U.S. at 849 (holding that conduct intended to unjustifiably harm an individual "is the sort of official action most likely to rise to the conscience-shocking level"); Waldron, 954 F.3d at 1310 (holding that a plaintiff would state "a violation

---

[3] Allegations of conduct that is somewhere between deliberately indifferent and intending to cause harm would require the Court to examine the totality of circumstances to determine whether that conduct was conscience-shocking. See Waldron, 954 F.3d at 1311 n.11 ("We do not rule out the possibility that there might be a level of culpability higher than recklessness and deliberate indifference, but lower than an intent to cause harm, that the Supreme Court might ultimately decide is sufficient."). But because the Court finds Plaintiff's allegations sufficient to show the Operator-Defendants intended to cause Mr. Smith harm, the Court need not determine whether some lower level of conduct shocks the conscience.

of clearly established substantive due process rights if" he alleged the defendant "intended to cause harm"). Plaintiff has done so here.

According to Plaintiff's allegations, the Operator-Defendants were "subjectively aware that Mr. Smith was in dire need of emergency medical care and that his situation was life-threatening based upon the information relayed to [them] by Plaintiff." Dkt. No. 51 ¶¶ 183, 192. Moreover, it is alleged that Roberson and Phillips knew that Plaintiff "was relying on WCAS and the [] E-911 Call Center for assistance and truthful information." Id. ¶¶ 184, 193. And even though both "knew that no ambulance and no mutual aid was available" to Mr. Smith, Roberson allegedly lied to Plaintiff by telling her an ambulance "had been called [] and would arrive soon," and Phillips allegedly lied by telling Plaintiff "an ambulance would arrive 'any time.'" Id. ¶¶ 180, 189. Under the standard set forth in Waldron, this conduct, as alleged, is conscience-shocking.

In Waldron, the plaintiff found her son after he had attempted suicide in the plaintiff's backyard. 954 F.3d at 1301. The plaintiff called 911 for an ambulance, and in the meantime, two other individuals began performing CPR on the plaintiff's son. Id. When the defendant, a Sheriff's Deputy, arrived on the scene, he directed the two individuals to stop performing CPR. Id. at 1301-02. The defendant also notified the ambulance, which had not yet

arrived, that the victim was deceased and there was no need to "rush" to the scene. Id. at 1302. The defendant did all of this even though he had been notified that the victim was still alive and CPR was helping. Id. Upon arrival, the EMT found the victim was not dead and transported him to the hospital, where he died a week later. Id. The Eleventh Circuit reversed the district court's grant of summary judgment because they concluded that, "if the jury should find that [the defendant] acted for the purpose of causing harm to [the victim]," the defendant's conduct would be conscience-shocking. Id. at 1310. To determine what level of culpability would be required to establish conscience-shocking conduct, the court analyzed the circumstances surrounding the defendant's conduct. The court noted that "[w]ith respect to the certainty and seriousness of harm," the circumstances in which the defendant found the victim "point[ed] . . . to the certainty of death or serious brain injury." Id. at 1311. Too, the court determined that "the use of the power of law enforcement to disable all possible life-saving possibilities with the intent to cause harm to the victim is the epitome of the 'abuse of power' and 'instrument of oppression' that is at the core of what substantive due process is intended to protect against." Id. at 1312 (quoting Lewis, 523 U.S. at 846). Ultimately, the court held that an intent to cause the specific harm of "death or serious brain injury" was conscience-shocking. Id.

The circumstances surrounding the Operator-Defendants' conduct warrant the same conclusion at this stage. As in Waldron, the circumstances in which the Operator-Defendants found Mr. Smith, as explained to them by Plaintiff, pointed to near certain death or brain injury. Id. at 1311; see also Dkt. No. 51 ¶ 183 ("Roberson [and Phillips were] subjectively aware that Mr. Smith was in dire need of emergency medical care and that his situation was life-threatening."). Additionally, like the police officer in Waldron, Roberson and Phillips, as E-911 operators, were in a unique position where they knew that Plaintiff and Mr. Smith were relying on them for "assistance and truthful information." Id. ¶ 184. And they knew that lying to Plaintiff about whether an ambulance was coming "would cause an extremely great risk of serious injury or death to Mr. Smith." Id. ¶ 184. The Operator-Defendants' power to keep Mr. Smith from obtaining treatment "is the epitome of the 'abuse of power' and 'instrument of oppression' that is at the core of what substantive due process is intended to protect against." Waldron, 954 F.3d at 1312 (quoting Lewis, 523 U.S. at 846). According to Waldron, Plaintiff has alleged conscience-shocking conduct if she has alleged that the Operator-Defendants actively hindered Mr. Smith from obtaining medical attention with an intent to cause death or serious brain injury.

According to Plaintiff's allegations, Roberson and Phillips "*deliberately* provided false information to Plaintiff . . . instead

[of] the truthful life-saving information Plaintiff needed." Dkt. No. 51 ¶ 184 (emphasis added). The Court finds that Plaintiff's allegation that the Operator-Defendants deliberately lied to Plaintiff about the availability of an ambulance is enough to show an intent to cause harm at this point in the proceedings. Plaintiff goes a step further, alleging that neither Roberson nor Phillips "advise[d] Plaintiff as to any life-preserving or life-saving techniques that might help Mr. Smith until the ambulance and EMTs could arrive." Id. ¶ 40. When viewed along with Plaintiff's other allegations against the Operator-Defendants, this allegation strengthens the Court's inference that they acted with the intent to cause death or serious brain injury to Mr. Smith. At bottom, the Court finds Plaintiff has alleged that the Operator-Defendants' conduct is conscience-shocking, and therefore, Plaintiff has alleged a violation of Mr. Smith's constitutional rights.

As to the second prong of the analysis, Mr. Smith's constitutional right was clearly established at the time of the Operator-Defendants' alleged violation. When analyzing whether a right was clearly established, "[t]he 'dispositive inquiry . . . is whether it would have been clear to a reasonable officer' in [the Operator-Defendants'] position 'that their conduct was unlawful in the situation they confronted.'" Wood v. Moss, 572 U.S. 744, 758 (2014) (quoting Saucier v. Katz, 533 U.S. 194, 202

(2001)) (alterations accepted). The simplest way to show that a constitutional violation was clearly established is by "pointing to a case, in existence at the time, in which the Supreme Court or [the Eleventh Circuit] found a violation based on materially similar facts." Johnson v. City of Miami Beach, 18 F.4th 1267, 1273 (11th Cir. 2021). In analyzing whether a case satisfies the clearly-established requirement, the Court must conduct an inquiry "in light of the specific context of the case, not as a broad general proposition." Brousseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam). For the reasons discussed above, the Court finds Waldron is factually similar enough to satisfy the clearly-established requirement. Put another way, based on Waldron, it would have been clear to a reasonable government official that intending to cause Mr. Smith's death by lying about the arrival of an ambulance was unlawful. Thus, the Court finds Plaintiff's allegations are sufficient to establish that the Operator-Defendants violated Mr. Smith's clearly established constitutional right. Defendants' motion to dismiss Count Three for failure to state a claim, dkt. no. 57 at 15–20, is **DENIED**. Likewise, Defendants' motion to dismiss Count Three based on qualified immunity, id. at 23–24, is **DENIED**.

### 3. Defendants Jeffords, Johnson, and Ray

In Count Four, Plaintiff asserts claims for substantive due process violations against Defendants Jeffords, Johnson, and Ray,

(hereinafter "the Supervisor-Defendants") based on "supervisory liability." Dkt. No. 51 at 38. Essentially, Plaintiff claims that Defendants Jeffords, Johnson, and Ray, as direct supervisors of E-911 operators, are liable for the Operator-Defendants' alleged constitutional violation. Id. Defendants first argue Count Four should be dismissed because there is no underlying constitutional violation to support a finding of supervisory liability—i.e., they argue the Supervisor-Defendants cannot be held liable because the Operator-Defendants did not violate Mr. Smith's constitutional rights. Dkt. No. 57 at 21. But that argument fails, as the Court finds that Plaintiff's allegations are sufficient to show that Roberson and Phillips violated Mr. Smith's constitutional rights. See supra pp. 25-32. Defendants' other arguments, however, require a deeper analysis. Specifically, Defendants assert that Plaintiff's substantive due process claims against the Supervisor-Defendants are subject to dismissal because: (a) the Supervisor-Defendants did not personally participate in the alleged constitutional violation, and (2) the Supervisor-Defendants are protected by qualified immunity. Dkt. No. 57 at 21, 23-24; Dkt. No. 54 at 6-14.

"It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted). Instead, supervisors are

liable under § 1983 only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citations omitted). Because Plaintiff does not allege that the Supervisor-Defendants were present during Plaintiff's 911 calls or that they personally participated in the alleged constitutional violation, her allegations must establish a causal connection between the Supervisor-Defendants' conduct and the violation of Mr. Smith's constitutional rights. See Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022). The Court may find this causal connection when: (1) Plaintiff's allegations demonstrate that "the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights," or (2) Plaintiff's allegations "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."[4] Gonzalez, 325 F.3d at 1234-

---

[4] Plaintiff may also establish a causal connection by demonstrating "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, [yet] he fails to do so." Gonzalez, 325 F.3d at 1234. But Plaintiff does not allege "a history of widespread abuse" by subordinates. In fact, her allegations demonstrate the exact opposite: Roberson and Phillips were not abusing their duties because they were merely following the Supervisor-Defendants' directives. Thus, the third method is not at issue.

35 (internal quotations omitted) (alterations accepted). The Court finds that Plaintiff's allegations sufficiently demonstrate a causal connection under both methods.

As to the existence of a policy resulting in deliberate indifference to constitutional rights, Plaintiff's allegations must first establish that a policy existed. To that end, Plaintiff alleges that the Supervisor-Defendants implemented a policy requiring E-911 operators to lie to callers about whether an ambulance was on the way (hereinafter "the Policy").[5] See, e.g., Dkt. No. 51 ¶ 215 ("Defendants Jeffords, Johnson, and Ray [] implement[ed] . . . the County policy . . . of requiring County E-911 dispatchers to always inform 911 callers that an ambulance is on the way—even if that is known to be false—and to conceal the expected arrival time of an ambulance."). But for the Policy to qualify as a causal connection, Plaintiff must allege facts showing that it was "a persistent and wide-spread practice." Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). Thus, Plaintiff's allegation that Roberson and Phillips relied on this policy when violating Mr. Smith's constitutional rights, see,

---

[5] Plaintiff's allegations go into great detail about how each Supervisor-Defendant was responsible for implementing the Policy. See, e.g., Dkt. No. 51 ¶¶ 67–68 (Defendants Jeffords and Johnson), 205–07 (Defendant Jeffords), 211–13 (Defendant Johnson), 217–18 (Defendant Ray). While discovery may show that the Policy was implemented by any combination of the Supervisor-Defendants, the facts, as pleaded, allow the Court to infer that *each* of the Supervisor-Defendants was responsible for its implementation.

e.g., dkt. no. 51 ¶ 221, is not enough. See Craig v. Floyd Cnty.,
643 F.3d 1306, 1312 (11th Cir. 2011) ("A single incident of a
constitutional violation is insufficient to prove a policy or
custom."). "To prove that a policy . . . caused a constitutional
harm, a plaintiff must point to multiple incidents, or multiple
reports of prior misconduct by a particular employee." Ingram, 30
F.4th at 1254 (quoting Piazza v. Jefferson Cnty., 923 F.3d 947,
957 (11th Cir. 2019)). Plaintiff has done that here, alleging that
"in 2021 alone, 171 emergency callers received no response from
WCAS or mutual aid after calling 911." Dkt. No. 51 ¶ 219. Whether
those 171 incidents resulted in a constitutional violation is not
apparent at the motion to dismiss stage. But, as pleaded,
Plaintiff's allegations support finding that the Policy was "a
persistent and wide-spread practice." Depew, 787 F.2d at 1499.

On top of proving the existence of the Policy, Plaintiff "must
show that the custom or policy was deliberately indifferent to
[Mr. Smith's] constitutional rights." Guidry v. JP Morgan Chase
Bank, N.A., No. 2:20-cv-1618, 2021 WL 3860961, at *9 (N.D. Ala.
Aug. 30, 2021). "To do so, [Plaintiff] must allege facts showing
that [the Supervisor-Defendants]: '(1) [had] subjective knowledge
of a risk of serious harm; (2) disregard[ed] [ ] that risk; (3) by
conduct that is more than gross negligence.'" Franklin v. Curry,
738 F.3d 1246, 1250 (11th Cir. 2013). Plaintiff's allegations meet
this standard.

For starters, Plaintiff alleges that the Supervisor-Defendants knew that implementation of the Policy meant WCAS was operating below industry standards and not adequately serving the Wayne County community. See Dkt. No. 51 ¶ 74 ("At least as early as July 23 and 24, 2020 . . . Defendant Johnson presented information to the County Commission, Defendant Jeffords, [and] Defendant Ray, that WCAS and the County E-911 Call Center were . . . [not operating] for the protection of Wayne County citizens."). Even more to the point, Plaintiff alleges that the Supervisor-Defendants had "full knowledge" of 171 incidents of emergency callers suffering from the Policy by not receiving aid. Id. ¶ 219. Based on those allegations, Plaintiff has sufficiently alleged the Supervisor-Defendants' subjective knowledge of a risk of serious harm. Plaintiff's allegations also establish that the Supervisor-Defendants disregarded that risk by implementing the Policy "despite having full knowledge" of the risk. Id. ¶ 219. Finally, Plaintiff has sufficiently alleged, at various places throughout her complaint, that the Supervisor-Defendants were more than grossly negligent in their disregard of the risk the Policy posed. For example, Plaintiff alleges that the Supervisor-Defendants ignored the risk and implemented the Policy for the ulterior motives of "avoiding civil liability and concealing the fact that WCAS and the [] Call Center were . . . unable to provide sufficient coverage of County E-911 calls." Id. ¶ 220. Thus, at

this point, the Court is satisfied that Plaintiff has met her burden in establishing that the Supervisor-Defendants' implementation of the Policy was deliberately indifferent. As a result, Plaintiff has established a causal connection between the Supervisor-Defendants' implementation of the Policy and the alleged violation of Mr. Smith's constitutional rights. Gonzalez, 325 F.3d at 1234 (internal quotations omitted) (alterations accepted).

Plaintiff's factual allegations also "support an inference that the [Supervisor-Defendants] directed [Roberson and Phillips] to act unlawfully." Id. at 1235. To start, Plaintiff's allegations support an inference that the Supervisor-Defendants directed Roberson and Phillips to lie about whether an ambulance would be arriving. Dkt. No. 51 ¶¶ 67-68, 205-07, 211-13, 217-18. Lying about the arrival of an ambulance may be unlawful in several ways. First, as the Court has already determined, Roberson and Phillips's conduct was unlawful under the Fourteenth Amendment because it violated Mr. Smith's substantive due process rights. See supra pp. 25-32.

Second, Roberson and Phillips's actions, as directed by the Supervisor-Defendants, were unlawful under local Wayne County ordinances and Georgia Department of Public Health ("GDPH") Rules. Under the Wayne County code, "[a]ll ambulance services, vehicles and personnel shall at all times be operated in compliance with

39

all laws, rules, regulations, orders and decrees of the state and the county." Wayne Cnty. Code of Ordinances § 14-25(a). And the GDPH Rules provide that ambulance departments "shall take no action that would jeopardize the health or safety of a patient." Ga. R. & Reg. § 511-9-2-.18(22). Plaintiff's factual allegations support an inference that the Supervisor-Defendants directed Roberson and Phillips to act in a way that jeopardized the health and safety of Mr. Smith, which violates GDPH Rules. The GDPH Rules also provide that an ambulance department "shall not advertise its services in a false or misleading manner." Id. § 511-9-2-.18(7). According to Plaintiff, Wayne County advertises WCAS as an emergency service that is available to Wayne County citizens experiencing an emergency, and citizens are encouraged to call the E-911 Call Center to receive emergency services. Dkt. No. 51 ¶¶ 63-64, 100-02. Based on these allegations, the Court can infer that the Supervisor-Defendants, by directing Roberson and Phillips to lie about whether an ambulance was coming, were directing subordinates to act in violation of § 511-9-2-.18(7) because the lies contravened WCAS's advertising.

Finally, it is alleged that the Supervisor-Defendants directed Roberson and Phillips to act unlawfully under Georgia state law. Georgia law provides: "Once a person with an emergency condition presents himself or herself to an emergency medical provider for emergency services, that person shall be evaluated by

medical personnel." O.C.G.A. § 31-11-82(a). According to Plaintiff, the Supervisor-Defendants' directive to Roberson and Phillips to tell callers that an ambulance was on its way—even when it was not—meant the person needing medical attention was not being evaluated by medical personnel. The Supervisor-Defendants' directive, therefore, violated § 31-11-82(a). For those reasons, the Court finds the Supervisor-Defendants directed Roberson and Phillips "to act unlawfully," and as such, Plaintiff has established a causal connection via the second method outlined by the Eleventh Circuit. Gonzalez, 325 F.3d at 1235.

At bottom, the Court finds Plaintiff's factual allegations establish that: (1) the Supervisor-Defendants implemented a policy of lying about whether an ambulance was on the way that "resulted in deliberate indifference to [Mr. Smith's] constitutional rights," and (2) the Supervisor-Defendants "directed [Roberson and Phillips] to act unlawfully." Id. 1234-35. Thus, Plaintiff has sufficiently alleged a causal connection between the Supervisor-Defendants' actions and the violation of Mr. Smith's constitutional rights.

Because the Supervisor-Defendants raise the defense of qualified immunity, Plaintiff must also establish that Mr. Smith's constitutional rights were clearly established at the time of the alleged violation. Holloman, 370 F.3d at 1264. The Court finds she has done so. In Amnesty International v. Battle, the Eleventh

Circuit analyzed whether two defendants being sued under a supervisory liability theory were protected by qualified immunity. 559 F.3d 1170, 1175 (11th Cir. 2009). The court first determined that the plaintiff had shown a causal connection sufficient to establish a claim based on supervisory liability. Id. at 1180–81. Then, the court found that the plaintiff had sufficiently alleged a violation of his constitutional rights and that those rights were clearly established at the time of the defendants' alleged violation. Id. at 1181–85. Importantly, the court analyzed whether the conduct underlying the defendants' supervisory liability violated clearly established law. Id. at 1184–85. Put another way, the Court's determination of whether Mr. Smith's constitutional right was clearly established for Plaintiff's supervisory liability claims hinges on whether the right violated by Roberson and Phillips was clearly established. And as the Court has already determined, Mr. Smith's constitutional right was clearly established under Waldron. See supra pp. 32–33. Therefore, Plaintiff's allegations are sufficient to state a substantive due process claim based on supervisory liability and to overcome qualified immunity as to the Supervisor-Defendants. It may be that the allegations in the Third Amended Complaint are not supported with evidence during discovery. In the present posture of the case, however, Defendants' motion to dismiss Count Four must be **DENIED**. Dkt. No. 54 at 6–14; Dkt. No. 57 at 21, 23–24.

**C.  Plaintiff has stated a substantive due process claim against Wayne County.**

Count Two is Plaintiff's final federal law claim addressed in this order—a substantive due process claim against Wayne County based on Monell liability. Dkt. No. 51 at 28–32; see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) ("[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies."). According to Monell, a county "cannot be held liable under § 1983 *solely* because it employs a tortfeasor"—or in other words, a county "cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691 (emphasis in original). "Instead, it is when execution of a [county's] policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. In order to state a substantive due process claim against Wayne County under § 1983, Plaintiff's allegations must establish that (1) a constitutional violation occurred and (2) the violation occurred because of Wayne County's official custom or policy. See Bradberry v. Pinellas Cnty., 789 F.2d 1513, 1515 (11th Cir. 1986) ("Before a county or municipality can be held liable under § 1983, a plaintiff must establish that he suffered a constitutional deprivation and that the deprivation resulted from an official custom or policy." (citations omitted)); Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[I]nquiry into a governmental

entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

Wayne County argues only that Plaintiff has failed to establish that any constitutional violation occurred. Dkt. No. 57 at 21 ("Because the Third Amended Complaint [does not] stat[e] a claim that either Defendant Roberson or Defendant Phillips violated Mr. Smith's constitutional rights, there is no underlying constitutional violation upon which a [substantive due process] claim against Wayne County . . . may be premised."); see also Knight v. Miami-Dade Cnty., 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." (citations omitted)). But as this Court has already determined, Plaintiff's allegations sufficiently allege that the Operator-Defendants violated Mr. Smith's constitutional rights. See supra pp. 25–32. Thus, Plaintiff has established the first requirement of a substantive due process claim against Wayne County.

Wayne County does not argue that Plaintiff's allegations fail to establish the second requirement of a substantive due process claim against a county—that the deprivation of Mr. Smith's constitutional rights "resulted from an official [] policy" of Wayne County. Bradberry, 789 F.2d at 1515. But even if Wayne County had made that argument, the Court would find it unavailing. Plaintiff's allegations establish that the policy of lying to

44

emergency callers was an official policy of Wayne County. See Grech
v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (citations
omitted). Plaintiff alleges that, at a county commissioner meeting
shortly after Mr. Smith's death, the commission recognized that it
had been Wayne County's policy to have E-911 operators lie about
whether an ambulance was coming. Dkt. No. 51 ¶¶ 113–23. Moreover,
Plaintiff's allegations establish that Mr. Smith's constitutional
violation resulted from the Policy. See Williams v. Dekalb Cnty.,
237 F. App'x 156, 160 (11th Cir. 2009) ("If a plaintiff establishes
that a policy exists, he must then show that the policy was the
moving force behind the constitutional deprivation." (internal
quotation marks omitted)). "When a municipal policy itself
violates federal law, or directs a municipality to do so, resolving
'issues of fault and causation is straightforward.'" AFL-CIO v.
City of Miami, 637 F.3d 1178, 1187 (11th Cir. 2011) (quoting Bd.
of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). And as the
Court has already found, Plaintiff's allegations establish that
the Policy directs county E-911 operators to violate federal law
by acting in a way that shocks the conscience. Accordingly,
Plaintiff's allegations establish causation.

   For purposes of her substantive due process claim against
Wayne County, Plaintiff has established that: (1) a constitutional
violation occurred, (2) Wayne County had an official policy that
violated substantive due process rights, and thus, (3) the Policy

caused the deprivation of Mr. Smith's constitutional rights. See
McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o
impose § 1983 liability on a municipality, a plaintiff must show:
(1) that his constitutional rights were violated; (2) that the
municipality had a custom or policy that constituted deliberate
indifference to that constitutional right; and (3) that the policy
or custom caused the violation." (citations omitted)). Therefore,
Defendants' motion to dismiss Count Two is **DENIED**. Dkt. No. 57 at
21.

## IV.  Plaintiff's State Law Claims

Plaintiff's levies a myriad of state law claims against: Wayne
County; WCAS; and Defendants Jeffords, Johnson, Ray, Roberson, and
Phillips, in their individual *and* official capacities. See
generally Dkt. No. 51. Defendants argue all Plaintiff's state law
claims should be dismissed based on either sovereign or official
immunity. The Court begins with sovereign immunity.

### A.  Sovereign Immunity

Defendants assert that sovereign immunity bars Plaintiff's
state law claims against Wayne County—Counts 5, 11, 21, 30, 40,
and 41—and any state law claims against Defendants Jeffords,
Johnson, Ray, Roberson, and Phillips, in their official capacity—
Counts 7-10, 13-20, 22-29, and 32-41. Dkt. No. 54 at 25; Dkt. No.
57 at 25. "[S]overeign immunity extends to the counties, and a
county's sovereign immunity 'can only be waived by an Act of the

General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.'" McCobb v. Clayton Cnty., 710 S.E.2d 207, 209 (Ga. Ct. App. 2011) (quoting Ga. Const. of 1983, Art. I, Sec. II, Par. IX(e)); see also O.C.G.A. § 36-1-4 ("A county is not liable to suit for ay cause of action unless made so by statute."). Moreover, "the protection of sovereign immunity . . . protects county employees who are sued in their official capacities, unless sovereign immunity has been waived." Jobling v. Shelton, 779 S.E.2d 705, 709 (Ga. Ct. App. 2015) (internal quotations omitted). Plaintiff bears the burden of establishing that sovereign immunity has been waived for her claims. See Bd. of Regents of the Univ. Sys. of Ga. v. Daniels, 446 S.E.2d 735, 736 (Ga. 1994) ("[A] waiver of sovereign immunity . . . must be established by the party seeking to benefit from that waiver." (citations omitted)). Plaintiff chooses not to argue that sovereign immunity has been waived, as she concedes that sovereign immunity bars her state law claims against Wayne County. Dkt. No. 59 at 15. She also concedes that sovereign immunity bars her state law claims against the other Defendants in their official capacity. Id. Thus, the Court **GRANTS** Defendants' motion to dismiss the state law claims against Wayne County—i.e., Counts 5, 11, 21, 30, 40, and 41. Dkt. No. 57 at 25. The Court also **GRANTS** Defendants' motion to dismiss Counts 7-10, 13-20, 22-29, and 32-41, see id.,

to the extent they seek relief from Defendants in their official capacity.

## B. Official Immunity

All that remains of Plaintiff's state law claims are those against Defendants Jeffords, Johnson, Ray, Roberson, and Phillips, in their individual capacity—Counts 7-10, 13-20, 22-29, and 32-41. Defendants argue those claims are barred by official immunity. Dkt. No. 57 at 26.

### 1. Doctrine Overview

In Georgia, "[t]he doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacities." Schultz v. Lowe, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022). The immunity is "limited" because Georgia officials and employees may be sued if they negligently performed, or negligently failed to perform, their "ministerial functions" or if they acted with "actual malice or with actual intent to cause injury in [] performance of their official functions." Ga. Const. art. I, § II, para. IX(d); see also Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001) ("[A] public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." (citations omitted)). If Plaintiff has sufficiently alleged malice or an intent to injure on the part of the individual Defendants, it is not necessary to determine whether Defendants were performing

ministerial or official functions. Allegations sufficient to establish malice or an intent to injure preclude official immunity, full stop. See Smith v. LePage, 834 F.3d 1285, 1297 (11th Cir. 2016) ("To overcome official immunity, the plaintiff must show that the officer had 'actual malice or an intent to injure.'" (quoting Cameron, 549 S.E.2d at 345)). If there is no allegation of malice or intent to injure, however, "the determination of whether official immunity bars the suit against [Defendants] turns on the issue of whether [Defendants'] actions were discretionary or ministerial." Barnett v. Caldwell, 809 S.E.2d 813, 816 (Ga. 2018) (citing McDowell v. Smith, 678 S.E.2d 922, 924 (Ga. 2009)).

"'Actual malice' requires 'a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by [Mr. Smith].'" Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012) (quoting Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007) (internal quotation marks omitted)). Too, "merely unreasonable or '[e]ven recklessly illegal conduct does not support an inference of actual malice.'" Hart v. Logan, 664 F. App'x 857, 863 (11th Cir. 2016) (quoting Black v. Wigington, 811 F.3d 1259, 1265 (11th Cir. 2016)). Federal pleading standards allow for malice and intent to "be alleged generally." Fed. R. Civ. P.

9(b). Further, "actual malice can be inferred from [a defendant's] conduct." Hart v. Logan, 664 F. App'x 857, 863 (11th Cir. 2016). Still, "Rule 9 does not exempt Plaintiff[] from Rule 8's requirement that legal conclusions must be supported by plausible factual allegations to be considered by the Court." Gardner v. Bottoms, No. 1:21-cv-2798, 2023 WL 5596400, at *15 (N.D. Ga. July 21, 2023) (citing Iqbal, 556 U.S. at 678). At bottom, to sufficiently plead actual malice, Plaintiff must have alleged each Defendant acted with the intent to cause Mr. Smith's death, and those allegations must include supporting facts. The Court begins by analyzing Plaintiff's allegations against Defendants Roberson and Phillips.

## 2. Defendants Roberson and Phillips are not protected by official immunity at this stage.

Defendants argue that Plaintiff has not alleged actual malice against Roberson and Phillips because Plaintiff has alleged that Roberson and Phillips's conduct was "driven by their training, not a desire for Mr. Smith to suffer a fatal cardiac injury." Dkt. No. 57 at 20; see also Dkt. No. 51 ¶ 179 (alleging Roberson's decision to tell Plaintiff "that an ambulance was on the way to render life-saving aid to Mr. Smith when it was not" was "in line with [Roberson's] training as a Wayne County E-911 dispatcher"). In response, Plaintiff points out other allegations that she argues support a claim of actual malice against Roberson and Phillips.

Several allegations highlighted by Plaintiff fail to state a claim of actual malice,[6] but Plaintiff does note one potentially relevant allegation, which states:

> To the extent that such duties required discretionary acts, Defendants Roberson and Phillips acted with actual malice and a deliberate intention to do wrong by withholding from Plaintiff truthful and accurate information about the lack of ambulances available at the time, lying to her about the arrival of an ambulance, refusing to provide life-preserving or life-saving techniques that might help Mr. Smith until the ambulance and EMTs could arrive, and failing to contact mutual aid and/or not communicating to mutual aid that Mr. Smith was in dire need of oxygen supplementation.

Id. ¶ 415. The question then becomes whether this allegation is sufficient to state a claim of actual malice.

Plaintiff initially argues this allegation is sufficient to state a claim of actual malice because, under federal pleading standards, actual malice may be "alleged generally." Dkt. No. 59 at 13; see also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). But Rule 9 does not excuse Plaintiff's responsibility to plead a factual basis for general allegations of malice. Gardner v. Bottoms, 2023 WL 5596400, at *15 (citing Iqbal,

---

[6] The other allegations highlighted by Plaintiff all suffer from the same defect. They sufficiently allege implied malice but are insufficient to allege actual malice. For example, Plaintiff alleges that "Defendants Roberson and Phillips knew that Mr. Smith would die or suffer irreversible injury while waiting on a promised ambulance that was known not to be coming, but nevertheless chose [to] mislead Plaintiff into believing that an ambulance was on its way." Dkt. No. 51 ¶ 416.

556 U.S. at 678). After setting aside the "labels and conclusions"
of this allegation, Twombly, 550 U.S. at 555, the remaining factual
allegations, when taken as true, reflect that Roberson and
Phillips: withheld from Plaintiff truthful and accurate
information about the lack of ambulances available at the time;
lied to Plaintiff about the arrival of an ambulance; refused to
provide life-preserving or life-saving techniques that might help
Mr. Smith; and failed to communicate to mutual aid that Mr. Smith
was in dire need of oxygen supplementation.

　　At the motion to dismiss stage, these factual allegations are
sufficient to state a claim of actual malice. See, e.g., Harper v.
Perkins, 459 F. App'x 822, 828 (11th Cir. 2012) (finding
allegations sufficient because actual malice could be inferred
where the plaintiff alleged that the defendants unjustifiably
tased the plaintiff, knowing their actions would have "clearly
injurious consequences"). Plaintiff has sufficiently alleged that
Roberson and Phillips were "aware of a specific threat against
[Mr. Smith]"—that a lack of medical help would lead Mr. Smith to
die or suffer serious brain injury—and "intentionally chose not to
address that threat" by lying to Plaintiff about whether an
ambulance was on the way, refusing to provide life-saving
techniques that might help Mr. Smith, and failing to communicate
to mutual aid that Mr. Smith was in dire need of oxygen. Ward ex
rel. J.E. v. McIntosh Cnty. Sch. Dist., No. 2:18-cv-13, 2018 WL

5087234 (S.D. Ga. Oct. 18, 2018) (finding sufficient allegations of actual malice where plaintiff alleged defendant knew of a specific threat of hazing to plaintiff's son and intentionally chose not to address those threats, causing plaintiff's son to sustain injuries). Because Plaintiff has alleged Roberson and Phillips acted with actual malice, it is not necessary to determine whether they were acting within their discretionary authority. Qualified immunity does not protect allegedly malicious conduct. As a result, Defendants' motion to dismiss Plaintiff's state law claims against Defendants Roberson and Phillips in their individual capacity—Counts 10, 16, 20, 35, and 39–41—is **DENIED**. Dkt. No. 57 at 26–30.

### 3. **Plaintiff has not alleged actual malice against the Supervisor-Defendants.**

Defendants also argue that Plaintiff has not alleged actual malice against the Supervisor-Defendants. Essentially, Defendants argue that the Supervisor-Defendants could not have intended to cause Mr. Smith harm because they neither met, nor interacted with, Mr. Smith. See Dkt. No. 57 at 29–30 ("Defendants Ray and Johnson, who are not alleged to have had any interaction with Plaintiff or Mr. Smith, cannot possibly have intended to cause specific harm to a man whom they never met."); Dkt. No. 54 at 24 ("Plaintiff does not allege, and cannot allege, that Mr. Jeffords intended to cause the specific harm that purportedly befell Plaintiff and Mr.

Smith."). At most, Defendants argue, Plaintiff's allegations that the Supervisor-Defendants acted with reckless disregard or implied malice to the general public are not enough to meet the actual malice standard to overcome official immunity. See Dkt. No. 57 at 30 ("Rather, Plaintiff alleges at most that Ray and Johnson acted with reckless disregard for the well-being of whatever persons might ultimately be affected by their decisions, which is insufficient to support a finding of actual malice."); Dkt. No. 54 at 24 ("[T]o the extent that Plaintiff's third amended complaint ascribes intent to Mr. Jeffords, it is generalized in nature."). Defendants are correct. Plaintiff has not alleged that the Supervisor-Defendants acted with actual malice.

As stated above, "the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by [Mr. Smith]." Hoyt, 672 F.3d at 981 (quoting Murphy, 647 S.E.2d at 60). Plaintiff has alleged nothing that shows the Supervisor-Defendants intended to cause Mr. Smith to suffer a serious brain injury or die. Rather, taking Plaintiff's allegations as true, the Supervisor-Defendants, while acting in their supervisory roles, violated their duties to Mr. Smith and Plaintiff by: allowing WCAS to remain underfunded, underequipped, and understaffed to adequately respond to medical emergencies; implemented and enforced the WCAS policy of lying about whether an ambulance was coming; and negligently trained Defendants Roberson and Phillips

to carry out this policy in violation of Georgia state law. Plaintiff alleges that, at all relevant times, the Supervisor-Defendants were aware that *individuals* may die or suffer serious injury because of their actions. See, e.g., Dkt. No. 51 ¶ 389 ("Defendant Jeffords knew that individuals would die or suffer irreversible injury while waiting on a promised ambulance that was known not to be coming but chose to adopt and implement a policy that guaranteed such result regardless."). This generalized intent—i.e., knowing that *individuals* would die or suffer irreversible injury—is different from an intent to cause *Mr. Smith* harm. For that reason, it is not actual malice. See Murphy, 647 S.E.2d at 60 (finding allegations that school officials knew students would be injured by implementing a certain policy were merely allegations of "deliberate acts of wrongdoing done with reckless disregard for the safety of others," and not actual malice, because the allegations did not support finding that the officials intended to specifically injure one student). Plaintiff has, however, sufficiently alleged negligence on behalf of the Supervisor-Defendants. Thus, qualified immunity may still be inappropriate if the Court finds Plaintiff has alleged that the Supervisor-Defendants were acting within their ministerial duties. See Barnett, 809 S.E.2d at 816 (citations omitted).

**4. At this point, the Supervisor-Defendants are not entitled to official immunity.**

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Common Cause/Ga. V. City of Atlanta, 614 S.E.2d 761, 764 (Ga. 2005) (internal quotations omitted). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

Defendants argue that the Supervisor-Defendants' allegedly tortious acts were discretionary because "*any* acts or decisions" a supervisor makes regarding his delegation of authority "'would clearly call upon him to exercise personal deliberation and judgment based upon his experience and expertise.'" Dkt. No. 57 at 28 (quoting Ware v. Jackson, 848 S.E.2d 725, 730 (Ga. Ct. App. 2020)). Additionally, Defendants point out that the Supervisor-Defendants' purported duties, as alleged by Plaintiff, "come not from statutes or regulations, but from Plaintiff herself." Id. Plaintiff disputes this characterization, arguing that her allegations include a relevant statutory basis for the Supervisor-Defendants' alleged duties. See, e.g., Dkt. No. 59 at 11–12 (citing O.C.G.A. §§ 46-5-131(a), 31-11-5). And because they are statutory,

Plaintiff argues those duties are "mandatory, and as such, ministerial." Id. at 13. Plaintiff also argues that whether these duties were ministerial should not be decided at the motion to dismiss stage. Id. at 11 ("Dismissal is not appropriate upon a motion to dismiss when the distinction between a ministerial and discretionary duty cannot be definitively answered." (citing Austin v. Clark, 755 S.E.2d 796, 798 (Ga. 2014))).

It is true that "[t]he answer to th[e] pivotal distinction between a discretionary and a ministerial duty is highly fact-specific," requiring a well-developed record to accurately determine. Austin, 755 S.E.2d at 798. And while Plaintiff has provided myriad statutes under which the Supervisor-Defendants' duties *could* be based, "the record, to date, contains no job descriptions for the individuals being sued." Id. Instead, the Court must follow Plaintiff's allegations, which state that the Supervisor-Defendants had a duty to ensure that "[a]ll ambulance services, vehicles and personnel *shall* at all times be operated in compliance with all laws, rules, regulations, orders and decrees of the state and the county." Wayne Cnty. Code of Ordinances § 14-25(a). And Plaintiff alleges that the Supervisor-Defendants' violated the Georgia Department of Public Health's rule that ambulance departments "shall take no action that would jeopardize the health or safety of a patient, including without limitation the abandonment or mistreatment of a patient." Ga. R. & Reg. § 511-

9-2-.18(22). Indeed, this rule may impose a mandatory duty upon the Supervisor-Defendants.

At this point, the Court is satisfied that Plaintiff has alleged facts sufficient to show that the Supervisor-Defendants were acting in their ministerial role.[7] And because Plaintiff has alleged that the Supervisor-Defendants performed their ministerial duties negligently, official immunity is inapplicable. Thus, Defendants' motion to dismiss Plaintiff's state law claims against the Supervisor-Defendants in their individual capacities—Counts 7-9, 13-15, 17-19, 22-29, 32-34, 36-38, and 40-41—is **DENIED**. Dkt. No. 57 at 26-30.

## CONCLUSION

The Wayne County Defendants' motion to dismiss, dkt. no. 57, and Defendant Jeffords' motion to dismiss, dkt. no. 54, are **GRANTED in part** and **DENIED in part**.

---

[7] This is especially true where the record before the court is not well developed. "[T]here could be a [Wayne] County departmental policy explicitly detailing a 'laundry list of discrete tasks' that had to be followed in response to a 911 emergency telephone call to ensure that medical aid was promptly provided to callers in need." Marshall v. McIntosh Cnty., 759 S.E.2d 269, 274 (Ga. Ct. App. 2014) (quoting Austin, 755 S.E.2d at 798). On the other hand, discovery could show that the Supervisor-Defendants' conduct did not violate any mandatory duties, and at that point, Defendants could move for summary judgment on the relevant claims. But at this point, the Court declines to summarily find that the Supervisor-Defendants were acting in a discretionary role when they allegedly committed tortious conduct.

Plaintiff's third amended complaint does not violate Rule 8(a)(2) and is not a shotgun pleading. Additionally, at this point in the proceedings, the Court cannot determine whether WCAS is a department of Wayne County and thus whether it is a legal entity capable of being sued. Therefore, Defendants' motions to dismiss are **DENIED** on these grounds.

Next, Plaintiff has alleged sufficient facts to state a claim for her two federal law claims against Wayne County—Counts One and Two. And Plaintiff's allegations are sufficient to state a claim and overcome qualified immunity for her federal law claims against Defendants Jeffords, Johnson, Ray, Roberson, and Phillips—Counts Three and Four. Plaintiff's state law claims against Defendants Jeffords, Johnson, Ray, Roberson, and Phillips in their individual capacity—Counts 7-10, 13-20, 22-29, and 32-41—are not barred by qualified immunity. Defendants' motions to dismiss are **DENIED** as to these claims.

Plaintiff's state law claims against Wayne County—Counts 5, 11, 21, 30, 40, and 41—are barred by sovereign immunity. Sovereign immunity also bars Plaintiff's claims against Defendants Jeffords, Johnson, Ray, Roberson, and Phillips—Counts 7-10, 13-20, 22-29, and 32-41—to the extent they seek relief from those Defendants in their official capacity. Defendants' motions to dismiss are **GRANTED** as to these claims.

Further, the stay entered in this case is hereby lifted. The parties shall confer within **fourteen days** of the date of this Order and file a new Rule 26(f) report within **seven days** of the conference. <u>See</u> Dkt. No. 62.

**SO ORDERED** this 2nd day of May, 2024.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA